Vincent M. BLACKMON, Appellant,

v.

UNITED STATES, Appellee.

No. 01–CM–1157.

District of Columbia Court of Appeals.

Submitted Feb. 20, 2003.
Decided Nov. 20, 2003.

Ed Wilhite, appointed by the court, was on the brief and supplemental brief for appellant.

Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, Elizabeth Trosman, Luis Andrew Lopez, and Susan A. Nellor, Assistant United States Attorneys, were on the brief and supplemental brief for appellee.

Before TERRY, SCHWELB, and GLICKMAN, Associate Judges.

TERRY, Associate Judge:

Appellant was charged with one count of possession of marijuana, in violation of D.C.Code § 33–541(d) (1998).[1] He filed a pre-trial motion to suppress the marijuana which the police found in the pocket of his jacket. After an evidentiary hearing on the motion, which the court held contemporaneously with a non-jury trial, the court

denied appellant's motion and found him guilty as charged. Before this court appellant contends that the trial court erred in denying his motion to suppress, arguing (1) that the police had no right to order his passenger out of the car, so that the white rock-like substance believed to be cocaine, which led to his arrest, would never have come into the officers' plain view; (2) that seeing the white rock on the floor of the car in front of the passenger seat did not give the police probable cause to arrest him, since he was the driver, not the passenger; and (3) that the search of his jacket, which yielded the marijuana, was not within the proper scope of a search incident to arrest. We reject all three arguments and affirm the conviction.

## I

On March 18, 2000, at approximately 10:45 a.m., the police received a call "regarding suspicious subjects in a vehicle" parked on Colorado Avenue, N.W. Officer Todd Reid of the Metropolitan Police responded to the call. Upon arriving at the location given, he noticed a gray car parked in an alley near 5320 Colorado Avenue. Initially, Officer Reid saw only the passenger, later identified as Anthony Smith, but as he approached the car from the passenger side, he also noticed appellant in the driver's seat. At the same time, he saw Smith move "from a sit-back position to a leaning forward position" and concluded "that maybe he was talking to someone." Officer Reid then peered inside the car through the passenger side window and saw, in plain view, that the ignition had been "punched." The officer testified that he also noticed a screwdriver "in the front passenger area, I think it was on the floor."

---

1. Recodified as D.C.Code § 48–904.01(d) (2001). Appellant was also charged with one count of possession of cocaine, but that charge was dismissed by the government before the trial began.

Suspecting that the vehicle had been stolen, Officer Reid asked appellant and Smith to identify themselves and to explain why they were parked in the alley.[2] Smith said that his identification was in his pocket. Appellant's response was that he and Smith had been drinking at a nightclub the night before and "were just trying to sleep it off." Appellant also told Officer Reid that his identification was in the trunk and asked if he could retrieve it. Officer Reid "told him no, because I was by myself," and directed both occupants to keep their hands where he could see them.

Within ten or fifteen seconds, Sergeants Sheldon Hargrove and Reginald Powell arrived on the scene. Officer Reid informed them both that he believed the car was stolen. Upon hearing this, Sergeant Hargrove approached the car on the passenger side, and when he saw the punched ignition, he asked Smith, the passenger, to get out of the car. Once Smith had alighted, Sergeant Hargrove saw in plain view, on the floor in front of the passenger seat, a white rock-like substance which appeared to be crack cocaine. Hargrove asked Smith to move to the rear of the car, picked up the white rock, and told Sergeant Powell to place Smith under arrest.

Sergeant Hargrove then walked around to the driver's side and ordered appellant to get out of the car. As he stepped out, appellant removed his jacket and asked if he could put it in the trunk, to which Sergeant Hargrove replied, "Just set the jacket down." Appellant placed his jacket on the roof of the car, and was then taken to the rear of the car, where Smith was already being held. As Officer Reid searched the interior of the car for additional drugs, Sergeant Hargrove moved toward appellant and at the same time

picked up appellant's jacket from the roof. Upon reaching into the pocket of the jacket, he discovered a plastic bag containing a "green weed substance" which appeared to be marijuana. Appellant was then placed under arrest and handcuffed. Preliminary field tests indicated that the white rock was cocaine and that the "green weed substance" was marijuana.[3]

After the officers had made sure that "the scene was secure [and their] safety wasn't compromised," Officer Reid called his precinct on the police radio and reported the car's license number and vehicle identification number. Moments later he was informed by radio that the car had not been reported stolen.

Appellant testified that his car had been stolen about eight months earlier. He explained that the ignition was punched because he did not have the money to have the car repaired after it was recovered, so he drove it by using a screwdriver to enable him to start the engine.

The court denied the motion to suppress. Noting that the punched ignition and the screwdriver were "classic indicia of a stolen car," the court held that the officers had "articulable suspicion to go further and make [an] inquiry and investigate what is going on." Moreover, that suspicion gave the officers "license ... to secure the scene and secure their persons by placing the individuals they're dealing with in a position not to hurt them." This included the right to ask the occupants to get out of the car. After they did so, the white rock-like substance was in plain view, and when Sergeant Hargrove saw it, the police at that moment had a basis to arrest both occupants for possession of cocaine, since the law recognizes joint and constructive possession. Finally, because

---

2. Although he believed the car was stolen, Officer Reid did not ask appellant for the car registration, nor did he ask why the ignition had been punched.

3. A laboratory analysis later confirmed that the substance was in fact marijuana and weighed 10.3 grams.

a full search was permissible at that point, "the inevitable discovery of that marijuana was authorized, whether the jacket was on the defendant, [or] in the defendant's car, no matter where it was . . . ."

## II

█ When reviewing the denial of a motion to suppress evidence, this court must accept the trial court's findings of fact if they are supported by the evidence, and must draw all reasonable inferences in favor of sustaining the trial court ruling. *See, e.g., White v. United States*, 763 A.2d 715, 719 (D.C.2000) (citing cases). The trial court's application of the law to the facts, however, is reviewed *de novo. Id.* at 720 (citing cases). Applying these basic principles, we find no error in the trial court's denial of appellant's motion.

### A. *Removal of the passenger from the car*

Once Anthony Smith, the passenger, stepped out of the car, Sergeant Hargrove was able to see a white rock-like substance on the floor in front of the passenger seat which he believed to be cocaine. *See, e.g., Umanzor v. United States*, 803 A.2d 983, 999 (D.C.2002) ("when the occupants stepped out, the officer was legally standing in a position to view the items on the floorboard and the back seat"). Appellant argues that the police had no right to order Smith out of the car in the first place, since there was at that point no articulable suspicion, and the police have no automatic right to order occupants out

of a car. Had Smith remained in the car, appellant maintains, the white rock would never have come into the officers' plain view.

█ Appellant has no standing, however, to argue that the recovery of the marijuana from his jacket stemmed from the allegedly unlawful seizure of his passenger (*i.e.*, asking the passenger to get out of the car). "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1967) (citations omitted); *accord, e.g., Rakas v. Illinois*, 439 U.S. 128, 133–134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). This court has consistently applied this principle in a number of cases. *See, e.g., Belton v. United States*, 647 A.2d 66, 70 (D.C.1994); *Lewis v. United States*, 594 A.2d 542, 544 (D.C.1991); *Moore v. United States*, 468 A.2d 1342, 1344 (D.C. 1983).[4]

On this point our decision in *Mayes v. United States*, 653 A.2d 856 (D.C.1995), is dispositive. The two defendants in that case, Mayes and Graves, were passengers in a car that was double-parked with the motor running. The police asked all five occupants to get out of the car, and then proceeded to frisk Mayes, who had been in the back seat. A handgun was found in Mayes' pocket, which prompted the police to search the car and to frisk Graves and the other occupants. That frisk led to the discovery of another handgun in Graves' possession. We held that the frisk of Mayes was unlawful,[5] but that the discov-

---

4. Although the trial court did not address the issue of appellant's standing, "it has long been held that an appellate court may uphold a trial court decision for reasons other than those given by that court." *Prince v. United States*, 825 A.2d 928, 931 (D.C.2003) (citations omitted); *accord, e.g., Garrett v. Washington Air Compressor Co.*, 466 A.2d 462, 464 n. 5 (D.C.1983) (citing cases). In the matter at hand, after this case was submitted for

decision, we directed the parties to file supplemental briefs discussing whether appellant had standing to assert the Fourth Amendment rights of his passenger. The parties have done so, and thus the standing issue is properly before us.

5. We concluded that under the circumstances, if there was a traffic violation, it was "very minor . . . [and] could not support the

ery of the gun in Mayes' possession gave the officers a valid reason to frisk Graves, his companion. Because the unlawful search was directed toward Mayes rather than Graves, the fruit of Graves' search did not need to be suppressed. As we described it, there was "a critical (though fortuitous) difference between their situations. When the police frisked Mayes, they had no legal basis for doing so. By the time it was Graves' turn, they did." *Mayes*, 653 A.2d at 866. Accordingly, we reversed Mayes' conviction, but affirmed that of Graves because he had no standing to challenge the unlawful frisk of Mayes. *See also United States v. Payner*, 447 U.S. 727, 731–733, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *United States v. Meadows*, 885 F.Supp. 1, 3–4 (D.D.C.1995).

The same rationale applies here. Even assuming that the police were not justified in asking the passenger to get out of the car—an issue we do not decide because Smith's case is not before us—the fact is that they did so, and as a result they saw the white rock that ultimately led to appellant's arrest. Whether asking the passenger to alight from the car was an unlawful invasion of *the passenger's* Fourth Amendment rights is an issue that only the passenger can raise. Like the co-defendant Graves in the *Mayes* case, appellant does not have standing to argue that his motion to suppress should have been granted because of the asserted illegal seizure of his passenger.

## B. *Probable cause*

■ Our conclusion that appellant has no standing to assert the Fourth Amendment rights of his passenger does not, of course, preclude him from arguing that the discovery of the white rock on the floor in front of the passenger seat did not give rise to probable cause to arrest him, the

driver. "Probable cause exists where the facts and circumstances within the [officers'] knowledge ... warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *Spinner v. United States*, 618 A.2d 176, 178 (D.C.1992) (citations and internal quotation marks omitted); *see also Munn v. United States*, 283 A.2d 28, 30 (D.C.1971) (probable cause is assessed in light of police officer's experience and training).

■ Appellant argues first that the police had no probable cause to arrest him—and therefore no right to search his jacket—because the jacket was searched before the white rock was field-tested. This argument can be rejected without extended discussion, since "[p]robable cause rests on a reasonable probability that a crime has been committed, not on a certainty that illegal activity is afoot." *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir.1999) (citations omitted). In particular, the case law does not require the police to test suspected narcotics on the spot before making an arrest when other evidence supports a finding of probable cause. *See United States v. Potter*, 895 F.2d 1231, 1234 n. 1 (9th Cir.1990).

Next, appellant argues that the white rock which was found on the floor in front of the passenger seat gave the police probable cause to arrest only Smith, the occupant of that seat. He does not seriously dispute that a police officer such as Sergeant Hargrove, with eighteen years of experience, upon seeing a white rock-like substance that immediately appears to be cocaine, may entertain a reasonable belief that a crime (possession of cocaine) is being committed. The issue here, however, is whether the fact that the rock was found on the floor in front of the passenger seat

---

frisk of Mayes. If there was an infraction, it was by the driver .... There was no evidence

that Mayes had personally broken the law." *Mayes*, 653 A.2d at 862 (citation omitted).

gave Sergeant Hargrove probable cause to arrest only the passenger, or both the passenger and the person seated in the driver's seat.

■■■ The law of constructive possession requires a showing that the defendant (1) knew of the presence of the contraband, (2) had the power to exercise dominion and control over it, and (3) intended to exercise dominion and control over it. *See Rivas v. United States*, 783 A.2d 125, 128 (D.C.2001) (en banc); *Speight v. United States*, 671 A.2d 442, 455 (D.C.1996). Constructive possession may be shared jointly, and may be established by circumstantial evidence. *Rucker v. United States*, 455 A.2d 889, 891 (D.C.1983) (citations omitted).

■■■ We need not decide whether the government could have proven beyond a reasonable doubt that appellant was in constructive possession of the cocaine, since the issue here is not whether there was sufficient evidence for a conviction, but only whether there was probable cause for an arrest. "Probable cause must be supported by more than mere suspicion but need not be based on evidence sufficient to sustain a conviction." *Rucker*, 455 A.2d at 891 (citations omitted). With this lower threshold in mind, we hold that Sergeant Hargrove had probable cause to arrest appellant, the driver, based on seeing the white rock in front of the passenger seat. *See Rivas*, 783 A.2d at 128 ("A defendant's close proximity to drugs in plain view is certainly probative in determining not only whether he knew of the drugs and had the ability to exert control over them, but also whether he had the necessary intent to control (individually or with others) their use or destiny"); *Price v. United States*, 429 A.2d 514, 518 (D.C. 1981) (probable cause to arrest both driver and passenger based in part on seeing manila envelope commonly associated with drugs on passenger-side floor).

Generally, courts take a closer look at situations in which a passenger is found in close proximity to contraband when the passenger is the accused. *Rivas* is a good example of such a case. *See also, e.g., United States v. Bethea*, 143 U.S.App. D.C. 68, 71, 442 F.2d 790, 793 (1971) ("Merely showing that appellant was a passenger in the car and in proximity to the heroin is, without more, insufficient to support a finding of possession" (citations omitted)). However, because appellant was in the driver's seat, a fact from which a reasonable person might infer ownership of the car (or at least entitlement to drive it), there is a much stronger likelihood that he was at least in joint constructive possession of the cocaine. *See, e.g., Howard v. State*, 185 Ga.App. 215, 216, 363 S.E.2d 621, 623 (1987) ("Because appellant was the driver of the car in which the contraband was found, an inference was authorized that he had possession of the cocaine" (citation omitted)). Although such a likelihood may or may not warrant a finding of guilt beyond a reasonable doubt (an issue on which we express no opinion, since he was not tried for possession of cocaine), we find it sufficient to support the trial court's determination of probable cause in this case.

### C. *Search incident to arrest*

■■■ Finally, appellant contends that even if there was probable cause to arrest him, the search of the jacket was beyond the permissible scope of a search incident to a lawful arrest. His argument emphasizes the fact that, at the time of the search, he was "in control of the police and out of range of the jacket," which Sergeant Hargrove had in his possession.

In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court declared that when the police make a valid arrest, "[t]here is ample justification ... for a search of the arrestee's

person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763. The area of immediate control under *Chimel* "is determined by the potentiality for harm and not by actual, physical control by the arrestee at the time the search is conducted." *Lee v. State*, 311 Md. 642, 670, 537 A.2d 235, 248 (1988). As the Supreme Court has explained:

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their *exclusive control*, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (emphasis added).

Because of the short distance between appellant and the jacket, we hold that it was still within his immediate control in the sense that he could have reached it "with a lunge if he had wanted to do so." *Holt v. United States*, 675 A.2d 474, 481 (D.C.1996); *see also Lee*, 311 Md. at 669, 537 A.2d at 248 (upholding search of gym bag hanging on a fence a few feet away from defendant, who was "lying face down on the ground surrounded by armed police"). Nor does the fact that the jacket was in the actual possession of one of the officers at the time of arrest mean that it was within the "exclusive control" of the police, as that phrase was used in *Chadwick*, for these terms ("possession" and "control") are not necessarily synonymous with one another. *See United States v. Litman*, 739 F.2d 137, 139 (4th Cir.1984) (rejecting argument that "an article seized by an officer incident to arrest cannot be subjected to a warrantless search because

that article has been brought within the officer's exclusive control" (citing *New York v. Belton*, 453 U.S. 454, 461 n. 5, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)); *Ricks v. State*, 322 Md. 183, 188–190, 586 A.2d 740, 743–744 (1991) (rejecting argument that search of suitcase was unreasonable because it "was securely in police possession and beyond [defendant's] control").

For all of these reasons, we hold that the trial court did not err in denying appellant's motion to suppress the marijuana. His conviction is therefore

*Affirmed.*