898 A.2d 908 (2006)
In re T.H.; District of Columbia, Appellant.
No. 05-FS-306.
District of Columbia Court of Appeals.
Argued November 17, 2005.
Decided May 11, 2006.
*909 Sidney R. Bixler, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, Edward E. Schwab, Deputy Attorney General, and Rosalyn Calbert Groce, Chief, Juvenile and Criminal Section, were on the brief, for appellant.
Shilpa S. Satoskar, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellee.
Before FARRELL, RUIZ, and KRAMER, Associate Judges.
KRAMER, Associate Judge:
The District of Columbia appeals from the trial court's decision to suppress a handgun found during a search of the appellee, T.H., incident to his arrest for possession of illegal fireworks. The trial court ruled that the arrest of T.H. was *910 without probable cause and, therefore, that the evidence found during the search was inadmissible. We affirm.

I.
On June 30, 2004, at approximately 10:00 p.m., Officer Leonard Fogle saw a Sport Utility Vehicle ("SUV") parked illegally on 54th Street, Northeast. Officer Fogle, observing that there was no one in the driver's seat, approached the vehicle. As he approached, he saw a front-seat passenger, a rear-seat passenger (T.H.), and a box of fireworks in the back compartment behind the rear passengers' seat where T.H. was sitting. The officer asked T.H. and the front seat passenger who owned the fireworks, and both replied that the fireworks belonged to the absent driver. Thereafter, both were arrested for possessing the fireworks and were searched incident to that arrest. The officers found a handgun in T.H.'s pocket, leading to the motion to suppress that is at issue here.
After his arraignment on the charges of Carrying a Pistol Without a License, Possession of an Unregistered Firearm, Unlawful Possession of Ammunition, and Unlawful Possession of Fireworks, that is firecrackers and roman candles,[1] T.H. filed a motion to suppress the handgun, arguing that the police lacked probable cause to arrest him. On March 1, 2005, the trial judge held a hearing on the motion, and later made sixteen findings of fact. Specifically, he found:
[1] [T]he police officers approached an SUV that . . . was illegally parked.
[2] [A]t the time [T.H.] was the sole rear passenger in the SUV.
[3] [A] front seat passenger also occupied the SUV.
[4] [T]he driver of the SUV was not present.
[5] [T]he officers saw multiple boxes of fireworks in plain view in the rear compartment of the vehicle.
[6] [N]either fireworks nor any other contraband was located in any other part of the SUV.
[7] [N]othing obstructed full access to the rear compartment, the back compartment from the rear seat.
[8] [S]ome of the fireworks were within arms reach of [T.H.] if [he] were to pivot in his seat and face the back of the SUV.
[9] [B]oth [T.H.] and the front seat passenger said neither the SUV nor the fireworks were theirs. Rather, they ... said that those ... belonged to the driver, who they named.
[10] [N]o indicia of ownership existed through the evidence that ... by that I mean there was nothing in the evidence that showed that the respondent somehow owned or controlled the vehicle or fireworks.
[11] [T]he officers ordered the respondent out of the vehicle and he complied.
[12] [T]he respondent may have attempted to flee, although the evidence was less than resoundingly credible on this point. But either way, he was immediately stopped.
[13] [O]fficers handcuffed the respondent and placed him under arrest for possession of fireworks.
[14] [A]ll parties agreed that at this point [T.H.] was under arrest and that no warrant existed for his arrest.
[15] [T]he officers recovered the loaded firearm that was contained within a small zipped bag inside [T.H.'s] pants pocket, [and]

*911 [16] [T.H.] made no furtive gestures at any time.
At the conclusion of his findings, the trial judge ruled that "the government ha[d] not proven that the officers had probable cause . . . to believe that the respondent intended to exercise dominion and control over the fireworks." Accordingly, he granted the motion to suppress.
On appeal, the government argues that the judge erred by applying a reasonable doubt standard rather than a probable cause standard in determining whether T.H.'s arrest was proper. Further, the government argues that under the probable cause standard, the motion to suppress should have been denied. Thus, the two issues before this court are whether the trial court applied the proper standard in suppressing the handgun and, if it did apply the proper standard, whether it applied it correctly.

II.
Whether the trial court applied the proper legal standard is a question of law subject to de novo review. See Davis v. United States, 564 A.2d 31, 35 (D.C. 1989) (en banc). It hardly needs noting that the predicate for a lawful arrest is evidence sufficient to make it reasonably probable that a crime was committed, not the reasonable doubt standard. Blackmon v. United States, 835 A.2d 1070, 1074 (D.C. 2003) (citing United States v. Gordon, 173 F.3d 761, 766 (10th Cir.1999)). As we said in Blackmon, "We need not decide whether the government could have proven beyond a reasonable doubt that appellant was in constructive possession of the cocaine, since the issue here is not whether there was sufficient evidence for a conviction, but only whether there was probable cause for an arrest." Id. at 1075.
In support of its contention that the trial court erroneously applied a reasonable doubt standard, the government first points to the trial court's analysis of In re F.T.J., 578 A.2d 1161 (D.C.1990). In F.T.J., we found sufficient evidence to support the appellant's conviction for constructive possession of a machine gun beyond a reasonable doubt. Id. at 1163. The District argues that the trial court's recitation of the elements of constructive possession[2] and analogy of this case to F.T.J. demonstrate that the court applied the reasonable doubt standard in lieu of the probable cause standard when it granted the appellee's motion to suppress. On the contrary, it is clear that the judge was merely stating the elements of the underlying offense for which the defendant was arrested because knowing the elements of an alleged crime is essential in determining whether the police had probable cause to believe that those elements were present. See Blackmon, supra, 835 A.2d at 1075 (listing the elements of constructive possession).
Indeed, the record is replete with confirmation that the judge knew that the standard was probable cause, not beyond a reasonable doubt. Two days before ruling on the suppression motion, at the hearing on the motion to suppress, the trial court acknowledged that probable cause was the applicable standard. The prosecutor had conceded that he could not prove Possession of Fireworks beyond a reasonable doubt, but reminded the trial court that the only issue before it was "whether or not [the police] had probable cause to detain *912 [the appellee] and arrest him at that point." The judge replied, "I understand." Later in that hearing, the judge again acknowledged the proper legal standard during a colloquy with the appellee's counsel regarding Rivas v. United States, 783 A.2d 125 (D.C.2001) (en banc). In responding to counsel's citation of Rivas, the judge asked, "And what do you make of the government's argument that the Court in [Rivas] was discussing the beyond a reasonable doubt trial standard and not. . . the issue of whether there was probable cause for arrest?"
Likewise, in announcing his ruling on the motion to suppress, the judge stated: "The issue here is whether the police had probable cause to arrest the respondent. Whether the authorities had probable cause that [the appellee] constructively possessed the fireworks, that's what this case is about, constructive possession." In his conclusion, the court stated: "Under the circumstances of this case I find that the government has not proven that the officers had probable cause . . . to believe. . . that the respondent intended to exercise dominion and control over the fireworks and, therefore, I grant the motion to suppress." Thus, we find the appellant's argument that the trial court applied the wrong standard to be unsupported by the record.[3]

III.
We next turn to the issue of whether the court applied the probable cause standard correctly. In doing so, "[o]ur standard of review for a trial court's ruling on a motion to suppress tangible evidence requires `that the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court's ruling.'" United States v. Watson, 697 A.2d 36, 38 (D.C.1997) (quoting Holt v. United States, 675 A.2d 474, 478 (D.C. 1996)). "While factual findings will not be disturbed if supported by substantial evidence, conclusions of law are reviewed de novo." Id. (citing Holt, supra, 675 A.2d at 478). "Whether or not police had probable cause . . . is ultimately a question of law." Id. (citing Ornelas v. United States, 517 U.S. 690, 697-98, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).
In this case, the trial court reviewed the elements of constructive possession and found that the police officers did not have probable cause to believe that the appellee intended to exercise control over the contraband. In reaching this conclusion, the trial court stated, "The only evidence supporting the probability that the respondent committed a crime was his mere proximity to the fireworks, his statement that he was aware of their existence, and the weaker evidence of his attempted flight."
"There is no fixed formula for determining the existence of probable cause to arrest; it is rather a matter left to the informed judgment of a reasonably prudent arresting officer . . . . Generally, probable cause exists where the facts and circumstances within the arresting officer's knowledge . . . are sufficient in themselves to warrant a reasonable belief that an offense has been or is being committed." Rucker v. United States, 455 A.2d 889, 891 (D.C.1983) (internal citations omitted). Probable cause cannot be based on a "hunch" or a "gut" feeling, but "[i]f objective justification exists ... the threshold is *913 not set unreasonably high." Brown v. United States, 590 A.2d 1008, 1014 (D.C. 1991). "Probable cause must be supported by more than mere suspicion but need not be based on evidence sufficient to sustain a conviction." Blackmon, supra, 835 A.2d at 1075 (quoting Rucker, supra, 455 A.2d at 891). "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). A suspect's mere presence in a vehicle containing contraband does not constitute probable cause for his arrest. United States v. Di Re, 332 U.S. 581, 587, 68 S.Ct. 222, 92 L.Ed. 210 (1948). We conclude that, given its factual findings, the trial court did not err in concluding that the police lacked probable cause to arrest the appellee.[4]
Our analysis in this case is guided by two Supreme Court cases addressing probable cause under somewhat similar circumstances. In Di Re, an informant told the police that he would be purchasing counterfeit gasoline coupons from a supplier in Buffalo, New York. Id. at 583, 68 S.Ct. 222. When the police approached the car in which the sale was to take place, they found the informant sitting in the back seat holding two counterfeit coupons. Id. A driver and Di Re were in the front seat of the vehicle. Id. The informant told the officers that he had obtained the coupons from the driver (rather than from Di Re). Id. The police took all three men into custody, subsequently finding counterfeit coupons on Di Re. Id. The Supreme Court held that the officers did not have probable cause to arrest Di Re and reversed his conviction. Id. at 595, 68 S.Ct. 222. In reaching that conclusion, the Court relied upon (1) the public nature of the meeting, (2) the fact that the illegal activity was not "visibly criminal" and (3) that the police informant had specifically implicated the driver in the crime but not Di Re. Id. at 593-94, 68 S.Ct. 222.
In the second case, Maryland v. Pringle, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), a police officer stopped a vehicle for speeding. Id. at 367, 124 S.Ct. 795. There were three men in the vehicle, Pringle being the front-seat passenger. Id. at 368, 124 S.Ct. 795. After the driver of the car consented to a search of the vehicle, the police found $763 in the glove compartment and five bags of cocaine behind the back-seat armrest. Id. When none of the suspects responded to police inquiries regarding the ownership of the drugs or money, the police arrested all three men. Id. at 368-69, 124 S.Ct. 795. Pringle waived his Miranda rights and confessed that the cocaine belonged to him. See Miranda v. Arizona, 384 U.S. *914 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He subsequently moved to suppress his confession as the fruit of an illegal arrest. Pringle, supra, 540 U.S. at 369, 124 S.Ct. 795.
The Court held that the police had probable cause to arrest all three suspects. Id. at 372, 124 S.Ct. 795. Writing for the unanimous Court, Chief Justice Rehnquist reasoned that the police could infer a common enterprise among the three men because "[t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." Id. at 373, 124 S.Ct. 795. In addition, the Court noted that, unlike the "singling out" that occurred in Di Re, "none of the three men provided information with respect to the ownership of the cocaine or money." Id. at 374, 124 S.Ct. 795.
This case is closer to Di Re than to Pringle. As in Di Re, the primary factor the police relied upon for probable cause to believe the appellant was in possession of illegal fireworks was the appellant's proximity to that contraband, which was immediately behind him in the rear compartment of the SUV. But the presence of fireworks in a vehicleparticularly within days of the Fourth of Julyis not so "obviously criminal" as to make the driver of the SUV "unlikely to admit an innocent person with the potential to furnish evidence against him." See id. at 373, 124 S.Ct. 795.[5] Indeed, in the District of Columbia, some fireworks are legal and some are not. See 12 H DCMR § F-3309 (2004). We note, for example, that the list of prohibited fireworks includes sparklers "more than 20 inches (508 mm) in length" or fireworks containing a long list of various ingredients, such as mercury, arsenic tetryl, potash or sugar. 12 H DCMR § F-3309.1.1.1. (2004).[6] Moreover, the fireworks were fully visible to any member of the public walking by, suggesting that whoever placed them there believed there was no need for concealment.[7] Finally, both the appellee and the front-seat passenger informed the police that the driver owned the fireworks in the SUV's rear compartment. The fact that the passengers were willing to "single out" the driver as the owner of the fireworks weighs against a theory that the three men were part of a conspiracy to use or distribute *915 the contraband. See Pringle, supra, 540 U.S. at 374, 124 S.Ct. 795 (citing Di Re, 332 U.S. at 592-94, 68 S.Ct. 222).[8]
The Blackmon case is also instructive here. In Blackmon, an officer ordered a passenger out of a vehicle and then noticed a "white rock" on the floor in front of the passenger's seat. Blackmon, supra, 835 A.2d at 1072. The driver of the vehicle later argued that the white rock on the passenger-side floor did not give the police officer probable cause to arrest him for possession of cocaine. Id. at 1074. We held that the police had probable cause to arrest the driver. While acknowledging that the proximity of the driver to the drugs was probative, we went further in stating, "because appellant was in the driver's seat, a fact from which a reasonable person might infer ownership of the car (or at least entitlement to drive it), there is a much stronger likelihood that he was at least in joint constructive possession of the cocaine." Id. at 1075 (emphasis added) (citing Howard v. State, 185 Ga.App. 215, 363 S.E.2d 621, 623 (1987)).
Blackmon recognized that "courts take a closer look at situations in which a passenger is found in close proximity to contraband when the passenger is the accused." Id. at 1075 (citing Rivas, supra, 783 A.2d at 128; United States v. Bethea, 143 U.S.App. D.C. 68, 71, 442 F.2d 790, 793 (1971)). In this case, the appellee was merely a passenger in the SUV. Furthermore, the contraband was not in the passenger compartment of the vehicle with the appellee, as it was in Blackmon, but in the rear compartment of the SUV. While the rear compartment was accessible from the back seat of the SUV, it was the functional equivalent of a trunk given the design of the vehicle. Under these circumstances, in light of our analysis in Blackmon and the Supreme Court's holdings in Di Re and Pringle, we conclude that trial court was correct in finding that there was an insufficient factual basis for a finding of probable cause.
The trial judge knew the proper standard and applied it correctly to the facts of this case. The trial court's ruling is
Affirmed.
FARRELL, Associate Judge, dissenting:
Although some fireworks may legally be possessed in the District of Columbia, a great many othersincluding any that "explode," 12H DCMR § F-3309.1.1.1.2 (2006)may not. The trial judge found that "multiple boxes" of fireworks lay in the rear interior of the SUV within arm's reach of T.H., who admitted knowing they *916 were therehe claimed they were the driver's. In one open box, the arresting officer immediately saw roman candles, which are contraband in the District. Id. Government's exhibit no. 1, a color photograph depicting the box, shows packages with written descriptions of their contents (e.g., "25 shots") and "warning[s]." This evidence, I would hold, was sufficient to support a reasonable belief by the officerwhich is all that probable cause requiresthat T.H. knew what kinds of fireworks were in the boxes and was party to whatever use the car's occupants meant to make of the contraband.
This case does not resemble Di Re. There is a notable difference between gasoline ration coupons not "visibly" counterfeit, see 332 U.S. at 593, 68 S.Ct. 222, and fireworks whose packaging and descriptions reveal their contents, some expressly made contraband by law. (T.H. like anyone else, of course, was presumed to know the law distinguishing permitted from prohibited fireworks.) The officer was not required to assumefor probable cause purposesthat T.H. was blind to the identity of fireworks at least some of which, from their appearance, could be seen to be prohibited in the District of Columbia. Further, it is not significant that T.H. and the other passenger denied ownership of the fireworks. The "singling out" of the guilty seller in Di Re was relevant because it was a government informant who, having arranged in effect a "sting" purchase of the counterfeit coupons, reliably identified the driver (rather than Di Re) as the person from whom he subsequently bought them. In this case, the officer was not obliged to credit with similar reliability T.H.'s eagerness to place ownership of the fireworks in someone other than himself.
It remains to say that, were the contraband here drugs rather than fireworks, there would not even be an argument, in my view, that the police lacked probable cause linking T.H. to them. See, e.g., Rivas v. United States, 783 A.2d 125, 135 (D.C.2001) (en banc) ("Rivas's immediate proximity to unconcealed drugs in an automobile... certainly does make it more probable that he possessed the drugs."). The majority acknowledges the difference. See ante at 914 n. 6.
NOTES
[1] The government later dropped the Possession of Fireworks charge.
[2] In order to show constructive possession, the government must show "that the defendant (1) knew of the presence of the contraband, (2) had the power to exercise dominion and control over it, and (3) intended to exercise dominion and control over it." Blackmon, supra, 835 A.2d at 1075.
[3] We also note that other jurisdictions have held that a judge is presumed to know the proper legal standard when the parties repeatedly remind her of that standard, even if the judge's order does not state the standard explicitly. See, e.g., Commonwealth v. Ward, 426 Mass. 290, 688 N.E.2d 227, 232 (1997).
[4] In addition to the appellee's proximity to the contraband, the government relies heavily on the testimony presented to the trial court that the appellee attempted to flee the scene. The government is correct that "[f]light from the police ... is surely evidence of a guilty conscience and when combined with other factors can provide probable cause for arrest." In re R.E.G., 602 A.2d 146, 150 (D.C. 1992). What the government overlooks, however, is that the trial court found the evidence that the appellant attempted to flee "less than resoundingly credible," and noted that "we don't have the [respondent] trying to race off away from the [scene]." Indeed, the record reflects that the trial court weighed the evidence of attempted flight with its other findings of fact and concluded that the evidence of the appellant's flight was not sufficiently credible to be given weight in determining whether there was probable cause. Because "we defer to the factfinder to determine credibility, weigh the evidence, and draw reasonable inferences," see, e.g., Vaas v. United States, 852 A.2d 44, 46 (D.C.2004), we are unpersuaded that flight can appropriately be added to the mix of factors that the government relies upon in arguing that there was probable cause for the appellant's arrest.
[5] Thus, the presumption that persons know the law, referred to in the dissent, is more appropriately applied to hold those responsible who are in actual possession of contraband than to a determination of whether there is probable cause to believe that someone is in constructive possession of the contraband. Had T.H. been in actual possession of the contraband, there would have been no further need for the police to show probable cause that he intended to exercise dominion and control over them.
[6] The court does not, because the issue is not presented, imply anything about whether there would have been probable cause to arrest T.H. had the rear compartment of the SUV contained illegal drugs, as in Pringle. The inference the Court found in Pringlethat bags of cocaine in a car (even concealed from view) bespeak "drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him"is not one fairly drawn in the case of fireworks, at least without testimony of an active, illicit market in their distribution. See Pringle, supra, 540 U.S. at 373, 124 S.Ct. 795.
[7] The dissent mentions that a warning can be seen in a picture of the fireworks that was admitted into evidence. We have no evidence, however, that warnings are only placed on fireworks that are illegal. Indeed, warnings are routinely found on items that are perfectly legal, such as baby pajamas, toys, and cleaning fluid. Thus, the existence of warnings on fireworks does not add any support to the finding of probable cause.
[8] The dissent distinguishes the "singling out" in Di Re on the basis that the information came from a government informant, not merely, as here, passengers in the car who were unknown to the police and whose statements were clearly self-serving. Their statements, however, pointing the finger at the absent driver as the owner of the fireworks, are probative (though not dispositive) on the issue of whether a conspiracy to use or distribute the fireworks existed between the passengers and the absent driver, making its existence less likely. Indeed, in Pringle, supra, the Supreme Court used the fact that suspects refused to single out one individual as the possessor of drugs found in a vehicle as evidence of probable cause to arrest all of the suspects as jointly in possession of the contraband. 540 U.S. at 374, 124 S.Ct. 795 (citing Di Re, supra, 332 U.S. at 594, 68 S.Ct. 222). In this instance, the "singling out" undermined the likelihood of a conspiracy and likewise undermined the likelihood that the passengers intended to exercise dominion or control over the fireworksan element of the crime at issue. Thus, we conclude that, while not dispositive, the passengers' "singling out" of the driver as the owner of the contraband is a legitimate factor to consider among the totality of circumstances that may or may not support probable cause.