Robert J. HOWARD, Appellant,

v.

UNITED STATES, Appellee.

No. 05–CM–221.

District of Columbia Court of Appeals.

Argued June 7, 2006.
Decided July 6, 2006.*
Amended May 3, 2007.

* This opinion was originally issued on July 6, 2006. *See Robert J. Howard v. United States,* 902 A.2d 127 (D.C.2006). Upon consideration of appellant's post-decision petition, this opinion is being reissued in amended form.

Dennis M. Hart, Washington, appointed by the court, for appellant. Dennis M. Hart filed a supplemental brief for appellant.

John W. Borchert, with whom Kenneth L. Wainstein, United States Attorney at the time, and Roy W. McLeese III, and Margaret Sewell, Assistant United States Attorneys, were on the brief, for appellee.

Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Elizabeth H. Danello, John W. Borchert, and Chrisellen R. Kolb, Assistant United States Attorneys, filed a supplemental brief, for appellee.

James Klein, Samia Fam, and Andrea Roth, Public Defender Service, filed a supplemental brief as amicus curiae in support of appellant's petition.

Before WASHINGTON, Chief Judge, REID, Associate Judge, and KING, Senior Judge.

REID, Associate Judge:

After a bench trial, appellant Robert J. Howard was convicted of one count of unlawful possession of a controlled substance (marijuana), in violation of D.C.Code § 48–904.01(d) (2001). He filed a timely notice of appeal challenging the trial court's denial of his motion to suppress evidence, the sufficiency of the evidence, and the trial court's denial of his motion to require the government to produce for examination at trial the chemist who prepared the chemical analysis of the substances which the police seized from his person and from the ground.

After we affirmed the judgment of the trial court and held (1) that the trial court properly denied Mr. Howard's motion to suppress evidence, and that the evidence was sufficient beyond a reasonable doubt to convict him of possession of a controlled substance; and (2) that Mr. Howard was afforded a statutory opportunity to confront the chemist at trial, but waived that right, appellant filed a petition for rehearing *en banc*, which the government opposed. In our July 6, 2006 decision, we declined to resolve the constitutional issues presented by Mr. Howard, and instead, narrowly focused on Mr. Howard's statutory opportunity to present the chemist. The Public Defender Service filed a consent motion to participate as *amicus curiae* and to lodge its brief, which this court granted. While appellant's petition for rehearing *en banc* was pending, this court issued its decision in *Thomas v. United States*, 914 A.2d 1 (D.C.2006).[1] There, we held that

> [The Confrontation] Clause [of the Sixth Amendment to the Constitution] was violated when the prosecution introduced a Drug Enforcement Administration chemist's written expert testimony against appellant without calling the chemist to appear and testify in person.... [D.C.Code] § 49–905.06 [2001] still authorizes the government to introduce a chemist's report without calling the chemist in its case-in-chief, but only so long as the record shows a valid waiver by the defendant of his confrontation right. Absent a valid waiver, which usually must be express but under some circumstances may be inferable from a defendant's failure to request the government to produce the author of the report, the defendant enjoys a Sixth

Amendment right to be confronted with the chemist in person.

*Thomas, supra,* 914 A.2d at 5. Unlike Mr. Howard, Mr. Thomas did not raise a Confrontation Clause objection during his trial. Therefore, we affirmed Mr. Thomas' conviction because "his invocation of the [Confrontation] Clause on appeal ... [did not] survive [plain error] scrutiny" because the plain error, which "affected appellant's substantial rights," did not "seriously affect[] the fairness, integrity or public reputation of the judicial proceeding."

Following the issuance of *Thomas, supra,* the merits division in *Howard, sua sponte,* ordered the parties and *amicus curiae* "to file supplemental briefs solely on issues related to the Confrontation Clause [of the Sixth Amendment to the Constitution] and the impact of [] *Thomas* [] on the disposition of this case." In the same order, dated January 5, 2007, this court also decided to hold the petition for rehearing *en banc* in abeyance pending the filing of the supplemental briefs.

Since *Thomas* considered and resolved the constitutional issue presented in *Howard,* which we did not address in our July 6, 2006 decision, we now hold, consistent with *Thomas,* that Mr. Howard's Sixth Amendment Confrontation Clause right was violated when the trial court, over his objection, admitted a Drug Enforcement Administration chemist's report in lieu of the chemist's live testimony. Furthermore, on this record, we see no valid waiver by Mr. Howard of his confrontation right. Unlike *Thomas,* Mr. Howard's case is not subject to plain error analysis. Consequently, we now conclude that Mr. Howard is entitled to a new trial. We reverse

---

1. The petitions filed by the parties in *Thomas* for rehearing and rehearing *en banc* were denied by this court on April 13, 2007.

his conviction and remand this case to the trial court.[2]

## FACTUAL SUMMARY

During a hearing on Mr. Howard's motion to suppress, the government presented evidence showing that on February 6, 2004, around 10:50 p.m., Officer James Craig, a seven-year veteran of the Metropolitan Police Department ("MPD") and a member of the narcotics tactical unit, was on duty at an observation post in the 1200 block of Stevens Road (in the Southeast quadrant of the District of Columbia), "one of the largest open-air drug markets for the sales of marijuana in the District of Columbia," located in the Barry Farms Housing Complex. Officer Craig "was in the observation post for approximately two to three minutes." During that time he watched and listened as a man (later identified as Mr. Howard), who was wearing a black jacket and dark-colored pants, "attempt[ed] to flag down cars yelling," "Hey, hey, right here, right here" and "waving his arms as cars would drive by." In light of his experience, gained from "approximately five hundred observation post[]" operations, Officer Craig concluded that "individuals in open-air drug markets [who] wave their hands and yell at cars passing by ... [are] attempting to stop vehicles in order to sell narcotics." After "a couple of minutes[,]" Officer Craig's position was "compromised" when a passerby saw him. Consequently, Officer Craig used his radio to alert MPD Officer Eric Siebert,[3] who also was working in the Stevens Road area as part of an arrest team. Officer Craig told Officer Siebert that he should "move in and make contact with" Mr. Howard, described then by Officer Craig as "a black male wearing a black jacket and dark-colored pants yelling at cars as they were going by, attempting to flag them down." "[D]ue to [his] experience especially in an open-air drug market," Officer Siebert recognized that "if you're flagging down numerous vehicles[,] you're attempting to stop them to sell drugs." Officer Craig kept Mr. Howard in sight while he directed Officer Siebert (and Officer Matthew Daly) to the place where Mr. Howard was standing.

When Officer Siebert arrived on the scene in his "tactical uniform" (with a vest, badge and belt, and a "jacket underneath [his] vest that had MPD on the sides"), he saw Mr. Howard, who "was in the 1200 block of Stevens ...; pretty much at the cross section of the alley ... and Stevens Road." Another person stood "approximately 10 or 15 feet away from [Mr. Howard,]" but Officer Siebert did not think they were "directly together." When Mr. Howard saw Officer Siebert, "[h]e quickly walked up Stevens Road towards Wade Road."[4] Officer Siebert "asked him to stop," and as he approached Mr. Howard, the officer "saw four ziplock bags of marijuana ... on the sidewalk." The bags were located "where [Mr. Howard] was standing."[5] Mr. Howard stopped, as requested, and Officer Siebert took him "over to where [Officer Daly] ... had another individual stopped." Mr. Howard did not respond to Officer Siebert's question whether "he had any weapons on him." When the officer posed the question

---

2. For reasons of judicial economy, we retain our discussion of the motion to suppress because the same issue may be presented during a new trial.

3. Officer Siebert's last name also appears in the record incorrectly as "Seibert."

4. The other person on the street also walked away, and was apprehended by Officer Siebert's partner.

5. Officer Craig did not see Mr. Howard drop anything.

a second time and received no response, he "conducted a pat down of [Mr. Howard] for weapons." During the pat down, Officer Siebert "felt a texture consistent, from [his] experience, with ziplocks of marijuana." He removed the ziplocks and they later tested positive for marijuana.

During cross-examination of both officers, defense counsel sought to cast doubt on whether Mr. Howard was involved in any criminal activity, and whether he was the person that Officer Craig saw flagging down cars. Officer Craig acknowledged that he never saw Mr. Howard "sell anyone drugs" or "engage in any criminal activity"; nor did he remember providing information to Officer Siebert concerning Mr. Howard's height, weight or age. Officer Craig also reiterated that he was "sixty feet" away from Mr. Howard, and revealed that he was monitoring one other individual at the same time, but could not remember what that person was wearing. Officer Siebert said he did not see who dropped the ziplock bags that were on the ground. He recognized Mr. Howard as the person described in the radio transmission he received because he was "tall," there were "only two people ... wearing all dark clothing," and when he saw Mr. Howard, Officer Craig sent a message to him that "that's the one."

The trial court found that the police had reasonable articulable suspicion to stop Mr. Howard, and soon thereafter had probable cause to arrest him and to search him incident to the lawful arrest:

I think there is articulable suspicion to stop Mr. Howard based ... only on the fact that it's an open-air market and that he's waving his hands, saying "hey, hey, right here," trying to flag down a number of cars over [a] several minute period. I think that there was probably a crime. I find legally that there is reasonable articulable suspicion to stop him.

But ... even if there isn't ... the frisk is not in any way a product of the stop, the frisk is the product of the observation of the drugs on the ground at his feet, combined with the other facts....

And I also find that the drugs in the precise place where the defendant was at the time Officer S[ie]bert came into the block, coupled with the high drug area and the fact that the defendant was flagging down cars, is sufficient to create probable cause for the officers to arrest him, once there is probable cause, they can obviously search incident [to] that arrest....

And I think a second ground for the frisk, even where probable cause is not sufficient, which I believe it is[,] ... is the facts that I have mentioned, the drugs at his feet, the fact that he's flagging down [cars] gives the impression that he's a drug seller, coupled with his refusal to respond [to] the question, twice repeated on whether he had any weapons on him.... Therefore, he was entitled to remove [the ziplocks from Mr. Howard's person,] and again that Terry frisk is really a secondary rationale for the search rather than the princip[al] one, which I believe is based on the probable cause, so I would deny [the] motion to suppress.

At trial, the judge incorporated the testimony given during the suppression hearing. Officer Siebert's additional testimony focused on the procedures he followed in processing the ziplock bags found at the scene. With respect to those procedures, Mr. Howard moved for judgment of acquittal on the ground that there was a "discrepancy between the lab numbers ... [which] would indicate that there's a question as to whether or not these are the same drugs that ... in fact were allegedly taken from Mr. Howard and the Government has not proven constructive posses-

sion from the bags—the bags that were allegedly on the ground." The trial court denied the motion.

Mr. Howard testified in his own behalf. He denied the account of events given by the officers, and maintained that he had large holes in the pockets of his jacket that would make it impossible to retain ziplocks in them. He also denied having any drugs on the day in question. He claimed that the police did not find any ziplock bags on his person, and that he was arrested only because of the bags found on the ground. He stated that he was in the 1300 block of Stevens Road because his grandmother lived there. He believed the police fabricated the charge against him because he "beat" another possession charge after Officer Daly had arrested him in a prior year, and Officer Daly "had a terrible disposition towards [him]." In rebuttal, Officer Siebert testified that Mr. Howard had a hole in the pocket from which he removed the ziplock bags, but he demonstrated that the hole was only about three inches by one inch, and was "near the back of the jacket [but] the drugs were near the front."

At the conclusion of the trial, the judge incorporated his earlier findings relating to the denial of the suppression motion. In addition, he determined that Officer Siebert's testimony "seemed entirely credible" but that both on direct and cross-examination, "Mr. Howard's testimony was not credible" and was "evasive"; that Mr. Howard possessed the six ziplock bags found on his person and the four on the ground where he had been standing; and that the marijuana found on the ground and that discovered in Mr. Howard's jacket pocket "matched." Therefore, the court concluded that Mr. Howard "did possess both the [m]arijuana in his pocket and the [m]arijuana on the ground, and [found]

him guilty of the crime of possession of [m]arijuana."

## ANALYSIS

### *The Suppression Issue*

■ Mr. Howard contends that the trial court should have granted his Fourth Amendment motion to suppress evidence essentially because the police did not have reasonable, articulable suspicion to effect a stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that the police did not have a valid basis for the subsequent frisk of his person and seizure of the ziplock bags. The government argues that "the trial court properly concluded that the initial stop of appellant was supported by reasonable articulable suspicion," and that "[t]he trial court was also correct in finding that, once Officer S[ie]bert saw four zip-lock bags of suspected contraband on the ground where [Mr. Howard] had just been standing while flagging down cars, the police had probable cause to arrest [him] and could search him incident to his arrest."

■ "[O]ur standard of review for a trial court's ruling on a motion to suppress tangible evidence requires that the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court's ruling." *In re T.H.,* 898 A.2d 908, 912 (D.C.2006) (citing *United States v. Watson,* 697 A.2d 36, 38 (D.C.1997)) (quoting *Holt v. United States,* 675 A.2d 474, 478 (D.C.1996) (internal quotation marks omitted)); *see also Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc). "While factual findings will not be disturbed if supported by substantial evidence, conclusions of law are reviewed *de novo." T.H., supra,* 898 A.2d at 912 (citing *Holt, supra,* 675 A.2d at 478) (internal quotation marks omitted). This court must "ensure that the trial court has a

substantial basis for concluding that no constitutional violation occurred." *Thompson v. United States*, 745 A.2d 308, 312 (D.C.2000) (other citation and internal quotation marks omitted).

■■■ "To conduct a brief, investigatory stop of a person in keeping with the Fourth Amendment, a police officer must have a reasonable, articulable suspicion that criminal activity may be afoot." *Wilson v. United States*, 802 A.2d 367, 369 (D.C.2002) (citing *Terry, supra*, 392 U.S. at 30, 88 S.Ct. 1868) (other citation omitted). "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of justification for making the stop." *Id.* (citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). And, the police must have more than an "inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* (citing *Terry*, 392 U.S. at 27, 88 S.Ct. 1868) (internal quotation marks omitted).

Mr. Howard maintains that "[w]a[]ving at passing cars, even in a drug activity neighborhood, has not yet been elevated to the red flag status sufficient for a *Terry* stop," while the government argues that Mr. Howard's "conduct in flagging down cars in an open-air market ... by itself furnish[ed] the police with reasonable articulable suspicion to support a stop." If this conduct was not sufficient by itself, the government contends, the added factors of Mr. Howard quickly walking away when he saw Officer Siebert in his MPD tactical uniform and "the high-drug area" formed the justification for the stop.

■■ In *Wardlow, supra*, the Supreme Court of the United States declared that: "An individual's presence in an area of expected criminal activity, standing alone,

is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Id.*, 528 U.S. at 124, 120 S.Ct. 673 (citing *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). Nevertheless, presence in a high crime area is a factor to be considered in determining whether a police officer had reasonable, articulable suspicion. As the court said: "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation[;] .... [T]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Id.* (citation omitted). In the case before us, Mr. Howard not only was in an area known for illegal drug transactions, but the police saw him flagging down cars and yelling "hey, hey, right here, right here." Both Officers Craig and Siebert testified that, based on their experience, the act of flagging and waving down cars in an open-air drug market represents an effort to sell drugs.

*Wardlow* also recognized that "unprovoked flight upon noticing the police" or "nervous, evasive behavior" such as "[h]eadlong flight ... [,] the consummate act of evasion ...," may support reasonable, articulable suspicion. *Wardlow, supra*, 528 U.S. at 124, 120 S.Ct. 673 (citations omitted). Here, added to Mr. Howard's presence in a high crime area and his flagging and waving actions designed to get buyers for drugs, is the fact that he "quickly walked" up the road when he saw Officer Siebert, who was wearing his tactical uniform-vest, police badge, belt, and a jacket underneath his vest with the letters MPD on the sides. Although he did not run, his act of "quickly walking" away upon seeing the police officer, constituted "evasive"

behavior. Based upon the foregoing actions of Mr. Howard, we hold that Officer Siebert had "reasonable, articulable suspicion that criminal activity [might] be afoot," *Wilson, supra,* 802 A.2d at 369 (citing *Terry, supra,* 392 U.S. at 30, 88 S.Ct. 1868) (other citation omitted), and his *Terry* investigative stop was justified.

■ Furthermore, Officer Siebert's discovery of the ziplock bags on the ground where Mr. Howard had been standing, which he described as "pretty much at the cross section of the alley ... and Stevens Road," together with the factors discussed above, established probable cause to arrest the appellant. And, the search of Mr. Howard's person, which yielded ziplock bags that "matched" those on the ground, was valid as a search incident to a legal arrest. *Holt, supra,* 675 A.2d at 481 ("Once the police make a lawful arrest, they may search the arrestee's person and the area within his immediate control, in order to prevent the arrestee from gaining possession of a weapon or destructible evidence.").[6] In short, the trial court properly denied Mr. Howard's motion to suppress evidence, and the evidence was sufficient beyond a reasonable doubt to convict him of unlawful possession of a controlled substance (marijuana).

### The DEA Chemist Issue

Mr. Howard argues that "[b]y allowing the government to make its case without the live testimony of [the DEA chemist] who performed ... [the] analysis [of the substance in the ziplock bags found on the ground], the trial court improperly shifted the burden of proof and denied [Mr. Howard] his Confrontation Clause rights" under the Sixth Amendment. He relies on *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) which he maintains "trumped" our decision in *Howard v. United States,* 473 A.2d 835 (D.C.1984). The government argues that D.C.Code § 48–905.06,[7] which establishes the procedures for the admission of a chemist's report into evidence, was not invalidated by *Crawford;* but that "[e]ven if [the chemist's report] is a 'testimonial' statement, D.C.Code § 48–905.06 does not violate the Confrontation Clause." The government also contends that, "[b]ecause

---

6. We need not reach Mr. Howard's claim that the evidence was insufficient to show that he constructively possessed the ziplock bags on the ground that contained marijuana. Since he was convicted on one count of unlawful possession of a controlled substance, and because the trial court credited the testimony of Officer Siebert that he removed six ziplock bags containing marijuana from Mr. Howard's jacket pocket, Mr. Howard had actual possession of those bags and that was sufficient beyond a reasonable doubt to support the possession charge. *See Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *Smith v. United States,* 809 A.2d 1216, 1221–22 (D.C.2002). In addition, given our analysis, we need not address Mr. Howard's contention that the trial court erred by invoking the "plain feel" doctrine to justify the search of his person.

7. D.C.Code § 48–905.06 (2001) provides:

In a proceeding for a violation of this chapter, the official report of chain of custody and of analysis of a controlled substance performed by a chemist charged with an official duty to perform such analysis, when attested to by that chemist and by the officer having legal custody of the report and accompanied by a certificate under seal that the officer has legal custody, shall be admissible in evidence as evidence of the facts stated therein and the results of that analysis. A copy of the certificate must be furnished upon demand by the defendant or his or her attorney in accordance with the rules of the Superior Court of the District of Columbia or, if no demand is made, no later than 5 days prior to trial. In the event that the defendant or his or her attorney subpoenas the chemist for examination, the subpoena shall be without fee or cost and the examination shall be as on cross-examination.

he never contested the chemist's findings at trial, [Mr. Howard] suffered no actual prejudice from his inability to have the government present the chemist's findings via live testimony."

In October 2004, the government filed a notice of compliance with § 48–905.06, stating that: "The United States of America, by its attorney, the United States Attorney for the District of Columbia, herewith is serving upon the defense and filing with the Court copies of the official reports of chain of custody and of analysis of a controlled substance relevant to this case, together with a certificate of legal custody." Section 48–905.06 specifies that "the official report of chain of custody and of analysis of a controlled substance ... shall be admissible in evidence as evidence of the facts stated therein and the results of that analysis." The statute also provides that if a defendant wants to cross-examine the chemist who prepared the reports, "the defendant or his or her attorney [may] subpoena[] the chemist for examination...." And, "the subpoena shall be without fee or cost...." The notice filed by the government requested that the defense follow specified procedures "should [it] elect to subpoena the chemist for examination...."

The defense was silent about the government's notice of compliance with § 48–905.06 until February 1, 2005, two days before trial, when it filed a motion in limine to exclude the report of analysis, known as the DEA–7 (Certified Report of Controlled Substance Analysis Prepared By the Drug Enforcement Administration), asserting that Mr. Howard's right under the Confrontation Clause would be violated if the report was admitted into evidence. He maintained that the DEA 7 report is testimonial, and that he was entitled to the right to cross-examine the

chemist during the government's case-in-chief, rather than waiting for the defense case. Mr. Howard's supplemental brief focuses on the absence of any waiver of his confrontation right, and the applicability of *Thomas* to his post-decision petition. The government contends in its supplemental brief that "the Division in [] *Thomas* lacked authority to adopt a holding contrary to the holding [in Mr. Howard's case]," and "this case remains the controlling authority in this jurisdiction on the waiver issue ..."

We disagree with the government's position that *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971) ("[N]o division of this court will overrule a prior decision of this court ....") (footnote omitted) commands that our July 6, 2006 decision in *Howard* be applied as the controlling authority, rather than *Thomas, supra.* As *amicus curiae* contends, in part, "this division has before it Mr. Howard's ... petition and is free to reexamine its former opinion and render an opinion consistent with *Thomas.*" This is especially true, here, where the division's earlier decision in *Howard* "is not inconsistent with the ... constitutional holdings of *Thomas,*" and indeed "declined to address these issues."

In short, as we consider Mr. Howard's post-decision petition and *Thomas,* our only task is to determine whether Mr. Howard validly waived his constitutional confrontation right. Mr. Howard pressed his Confrontation Clause arguments before trial, both in his motion in limine and during the February 3, 2005 discussion of that motion by counsel for both parties and the trial court. In reviewing the motion and the February 3, 2005 transcript, we discern neither an express waiver of his Confrontation Clause right by Mr. Howard, nor a valid waiver which may be

inferred on this record.[8]  Consequently, Mr. Howard is entitled to a new trial.

Accordingly, for the foregoing reasons, we reverse Mr. Howard's conviction and remand this case to the trial court for a new trial.

*So ordered.*

---

**8.**  As this court noted in *Thomas*, prior to the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), our decision in *Brown v. United States*, 627 A.2d 499 (D.C.1993), was "settled precedent."  There, "we held that the Constitution does not require the government to produce the DEA chemist in its case-in-chief 'instead of merely making him available during the defense case.' "  *Thomas, supra,* 914 A.2d at 18 n. 22.  *Thomas* "[did] not view [the *Brown* ] holding as binding after" *Crawford.*  Thus, "[a]ppellant's failure to subpoena the DEA chemist . . . was not a valid waiver of his right of confrontation because settled precedent at the time of appellant's trial prevented him from requiring the government to produce the DEA chemist in its case-in-chief. . . ." *Id.* at 20 n. 25.